B & B COMPANY, Bankrupt, In re: BERBELIS et, Bankrupt.

IN THE DISTRICT COURT OF THE UNITED STATES, FOR THE NORTHERN DISTRICT OF OHIO EASTERN DIVISION.

Nos. 70710, 70700 and 70712. Decided July 14, 1954.

Alton L. Rinier, Trustee, Canton, Herman D. Emerman. Canton, Richard C. Minor & Roger Tarrell, Columbus. for Dept. of Taxation, J. G. Beyoglides, Canton, Wm. O'Neill, Atty Genl., Columbus.

## OPINION

By WOODS, Referee in Bankruptcy.

The Ohio Department of Taxation, by Stanley J. Bowers, Tax Commissioner of the Department of Taxation, on April 14, 1954, filed its claims against Nick John Berbelis, individually and as a partner, d. b. a. The B & B Co., case No. 70700, and Chris John Berbelis, individually and as a partner, d. b. a. B & B Co., case No. 70712, of Canton, Stark County, Ohio, for sales tax due the State of Ohio in the sum of $2,712.47 for the period of Jan. 1, 1950, to July 22, 1953, claiming priority by virtue of Sec. 64a(4) of the Bankruptcy Act.

Alton L. Renier, Trustee in Bankruptcy of the bankrupt partnership and as trustee for individual parties in the separate case of each bankrupt partner, filed his objection to said claim of the Ohio Department of Taxation, Sales Division.

The relevant Federal Statute is Sec. 64a of the Bankruptcy Act:

"The debts to have priority . . . . and to be paid in full out of bankrupt estates, and the order of payment, shall be . . . . (4) taxes legally due and owing by the bankrupt to the United States or any State or any subdivision thereof: . . . . And provided further, that, in case any question arises as to the amount or legality of any taxes, such question shall be heard and determined by the court." . . . .

The relevant Ohio Statutes under which this sales tax is assessed relied upon by the tax commissioner are §5739.01, et seq., R. C. (§§5546-1-11 GC), the particular section relied upon here is:

Sec. 5739.02 R. C. (§5546-2 GC). Levy of tax; purpose; rate; exemptions.

"For the purpose of providing revenue with which to meet the needs of the state for poor relief . . . . an excise tax is hereby levied on each retail sale made in this state of tangible personal property.

"(A) The tax is as follows:

"(1) No tax is imposed if the price is less than forty-one cents; . . . .

"(4) If the price in excess of $1.00, three cents . . . .

"(B) For the purpose of the proper administration of §5739.01 to §5739.31, inclusive, R. C., and to prevent the evasion of the tax, it is presumed that all sales made in this state are subject to the tax until the contrary is established." . . .

Bankrupt, The B & B Co., was a partnership consisting of

two brothers, Nick John Berbelis, Case No. 70700, and Chris John Berbelis, Case No. 70712, who operated a confectionery store and soda fountain at 536 Cleveland Ave., N. W., on a main street of Canton, Ohio, at a bus stop, and adjacent to schools McKinley High School, St. Peter's School, and St. John's School; so that the customers of the store were mainly school children from 6 to 17 years old who brought their own sandwiches and would have a coke or soft drink. and thus the sales rarely exceeded 40c (Tr. C. J. Berbelis, pg. 48).

The tax on sales for which the assessment is filed, is an estimate by tax agents for the state (Tr. pg. 28) for the period Jan. 1, 1950, to July 22, 1953.

The voluntary petition in bankruptcy was filed Oct. 15, 1953, and the First Meeting of Creditors of which notice was given all creditors including the State Department of Taxation soon after filing of the petition, was held on Oct 29, 1953. The inspection report of the examiner and his supervisor (State Ex. A) is dated March 22, 1954; the assessment report (State Ex. B) of Payne, the Examiner, and Cochran. the Supervisor, for the State Tax Department, is dated March 23, 1954, and the tax claim of the department is filed April 14, 1954. in the two individual cases of partners, for the tax assessment from Jan. 1, 1950, to July 22, 1953, for $2,712.47.

The claim thus is made by the State of Ohio for the sales tax for the period of 3½ years from Jan. 1, 1950, to July 22, 1953. The proof offered is an estimate made by State Agents, Examiner Payne who lived in Canton, and his chief, J M. Cochran, District Manager and Supervisor, who lived in Akron. From such records as Payne could assemble with the help of witness Shifman, an accountant who had done work for the bankrupts, he estimated that the sales in the period of more than 3½ years were $189,764.42 (State Ex. E), which included punch-board receipts, sales from soda fountain, drugs. some wholesale, although the bankrupts did not employ a pharmacist. Payne and Cochran, State Agents. both testified that they agreed that an estimate of 50% of sales should be held to be taxable and 50% should be exempted. so that on one-half of the total sales or an amount of $94,582.21 was assessed the 3% tax of $2,712.47 for which the claim was filed.

In this connection, it may be noted that Examiner Payne who lived in Canton, testified that he was in the store many times as a customer. but never as an official examiner (Tr. pg 14); he also testified that he never questioned either of bankrupts "about the character of their business or the nature of their sales." (Tr. pg. 19.) Cochran, the Supervisor, who lived in Akron, was never in the confectionery store of the bankrupts (Tr. pg. 33).

The testimony of Shifman who had been an accountant and made the income tax returns of bankrupt seems to be that only 40% of the sales of the bankrupt in the 3½ year period should have been considered taxable; so his estimate of any tax should have been considerably less than that of the State Tax Agents (Tr. pg. 43). Further doubt as to any value of an estimate upon which a tax could be assessed is shown by the following testimony of Shifman (Tr. pgs. 42-43):

State Atty.—Q. From your experience could you determine by any means how much of the fountain sales would be taxable?

Mr. Emerman, Bankrupt's Atty.: Object.

Witness: A.—It would depend on the character of fountain sales. To my experience that particular store, their sales were, we will say, small sales; soda, coca cola, possibly a sandwich and coffee.

Q. Did they serve sandwiches?

A. Yes, they served sandwiches. I would say that majority of the sales would have been under forty cents.

This testimony is as much as to say that since many of the sales were for 40c or under and exempt, no one knows how much they amounted to. The pertinent question then is, what value is this or any other estimate?

Chris John Berbelis, one of the partners, testifies that he had given seven years to the business previous to the bankruptcy, and that he was on the premises 13 hours of every day; that at first the store did a large punch-board business and that when this fell off, the business was mostly of confectionery, "sodas, sundaes, chewing gum, cracker jack, anything for the kids around the neighborhood." (Tr. pg. 48.) Further his testimony is that bankrupts employed no pharmacist, that the store was near two schools, that the purchases were less than 40c, that 90% of the business or over was on the fountain side, perhaps 10% of it taxable, sundaes were 10% of the business with only 5% taxable (Tr. pg. 49). He further testified that the store had ten stools and nine booths for customers, two old cash registers, presumably one for drug sales, the other for soda fountain sales, but no register sales slips were used by Shifman (Tr. pg. 38) and none were used by examiner Payne in the estimate of tax. Bankrupt witness further testified that he often put cash from sales in either register as it was difficult for him to get about as he had lost a leg in World War II; so that any money on register slips or any record in books used by accountant Shifman and Payne in their estimate of the business done was not accurate or reliable. (Tr. pg. 49.)

In this situation the court is confronted with a prima facie

case made by the State Tax Collecting Agents based upon an estimate made by the Examiner and his Supervisor, neither of whom visited the premises of bankrupts' confectionery store during the period for which the tax is levied. To overcome the prima facie case is the testimony of one of the bankrupt partners who was at the store at all times and the accountant who was familiar with its business.

Counsel for the State urge that the presumption of the prima facie case can only be overcome by the showing of the records brought by the bankrupt. What records there are were furnished by accountant Shifman who says that most of the sales were under 40c, and there is also the parole testimony of the bankrupt partner who was in the store at all times for which the tax is assessed saying to the effect that only 5% of the non-exempt sales should be taxable.

Counsel for the State relies upon **Obert v. Evatt, 144 Oh St 492** in which it is held that the recovery may be had for sales tax from a vendor in cases where the vendor failed to keep records or because of the nature of the vendor's business it was impracticle for him to keep such records. There is a long discussion of the rule and it is also discussed in **State ex rel. v. Evatt, 144 Oh St 65.** The facts of the present case do not bring it within the rule of State v. Evatt, supra, for the reason that the proof of the prima facie case offered by the State is only a computation or estimate of the taxes which might have been due from this vendor who is now bankrupt. Against this is the testimony of the accountant and the bankrupt partner. In such cases where the testimony is overcome the proof of actual facts controls over an estimate.

The rule is stated in **17 O. Jur. 35.** The legislature has power to prescribe rules of evidence and has also power to prescribe methods of proof. The rules may establish what shall constitute prima facie evidence but must provide that an adverse party shall be given opportunity to contest such claim in court. See Bowland v. Wolfe Shoe Co., 5 O. N. P. ns 170 which is also a tax case. This power of the legislature includes the power to enact that a relevant circumstance shall be presumptive evidence of an alleged fact, **Hammond v. State, 78 Oh St 15,** but such rule is not without its limitations. Again from **17 O. Jur. 115,** the burden of proof in meeting a prima facie case is satisfied by facts established which are other than an estimate.

Counsel for the State urges that on the authority of **Jones v. Glander, 150 Oh St 192 (1948),** that the vendor who has not kept records of tax-exempt sales of personal property may introduce parole evidence of the amount of such sales and then the assessment was sustained by the court because it

appeared that the burden of proving the tax-exempt sales had not been sustained by the taxpayer.

In the case at bar, all there is to sustain the estimated tax is the testimony of the two agents, one of whom never visited the premises and was not familiar with the business, and the other an examiner who admitted he had not talked with the bankrupt taxpayer about the nature of the sales.

In **Bloch v. Glander, 151 Oh St 381 (1949)**, the court held that parole evidence should be admitted where a vendor kept records of the total amount of his sales and produced oral evidence showing the nature of the sales which should be released, exempt from the tax. Judge Matthias of the Supreme Court said:

"The arbitrary application of a specific preadopted markup percentage of proceeds of sales over costs in determining the sales tax which should have been collected and the arbitrary application of a specific preadopted percentage of sales of food for consumption off the premises, without consideration and in disregard of evidence documentary or otherwise, adduced by the vendor, cannot be commended."

In an earlier case before this court in Re: Emil Carl Petersilge, No. 64390, it was held that in a case where a presumption of the estate of sales tax due is overcome by proof of facts other than the estimate, that the tax levied based only on the estimate is void and the claim therefore was disallowed.

In the case at bar, the proof failing to establish the claim as asserted by the State Tax Commissioner based on an estimate and there being evidence of one of the bankrupt partners, that only 5% of the non-exempt sales was taxable under this Ohio Statute, the findings are that claim of Tax Commissioner for the State Department should be allowed at 3% on such non-exempt sales in an amount of $141.95, and such is entitled to priority.